# IN THE UNITED STATES COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **MILLICENT R. BARASCH**, individually and on behalf of others similarly situated, *Plaintiff*, | § § § § | |
| | § | |
| v. | § § | |
| GPB CAPITAL HOLDINGS, LLC; DAVID GENTILE; WILLIAM JACOBY; MINCHUNG KGIL; MANUEL FREDERICO VIANNA; DOTTY J. BOLLINGER; MICHAEL FROST; EVAN MYRIANTHOPOULOS; ABHAYA SHRESTHA; MICHAEL COHN; STEVEN FRANGIONI; SCOTT NAUGLE; GPB HOLDINGS, LP; GPB HOLDINGS II, LP; GPB AUTOMOTIVE PORTFOLIO, LP; GPB COLD STORAGE, LP; GPB WASTE MANAGEMENT FUND, LP; GPB HOLDINGS III, LP; GPB HOLDINGS QUALIFIED, LP; GPB NYC DEVELOPMENT, LP; ASCENDANT CAPITAL, LLC; ASCENDANT ALTERNATIVE STRATEGIES, LLC; AXIOM CAPITAL MANAGEMENT, INC.;JEFFRY SCHNEIDER; MARK D. MARTINO; DJ PARTNERS LLC; MR RANGER, LLC; RSM US LLP (f/k/a McGLADREY LLP); EISNERAMPER LLP; GENTILE PISMENY & BRENGEL, LLP; CROWE, LLP; CROWE GLOBAL; DOE AUDITORS 1 through 10; PHOENIX AMERICAN FINANCIAL SERVICES, INC.; CKGF HOLDING LLC; McANNA, LP; ROBERT KESSLER; GERALD FRANCESE; RINA CHERNAYA; and DIANA CHERNAYA | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | **CIVIL ACTION NO. 1:19-cv-01079-LY**<br><br>**JUDGE LEE YEAKEL**<br><br>**MAGISTRATE JUDGE HIGHTOWER** |
| *Defendants* | | |

## GPB DEFENDANTS' MOTION TO DISMISS
### THE AMENDED COMPLAINT

## PRELIMINARY STATEMENT

Defendants GPB Capital Holdings, LLC ("GPB Capital"), GPB Automotive Portfolio, LP; GPB Cold Storage, LP; GPB Holdings II, LP; GPB Holdings, LP; GPB Holdings III LP; GPB Holdings Qualified LP; GPB NYC Development, LP; GPB Holdings Qualified, LP; and GPB Waste Management Fund, LP Defendants (collectively the "GPB Funds") (GPB Capital and the GPB Funds are sometimes collectively referred to as the "GPB Defendants") respectfully submit this motion to dismiss the putative First Amended Class Action Complaint (the "Complaint") brought by plaintiff Millicent R. Barasch ("Barasch" or the "Plaintiff") individually and on behalf of others similarly situated.

The gravamen of the Complaint is that Plaintiff and others were defrauded into purchasing limited partnership interests in the GPB Funds through a series of material misstatements and omissions in the private placement memoranda (the "PPMs") for the GPB Funds.  Plaintiff alleges that she and others relied on these alleged material misrepresentations and omissions in connection with their purchase of limited partnership interests.   Plaintiff has asserted claims for fraud and for the sale of unregistered securities under the Texas Securities Act, and for common law fraud, civil conspiracy and breach of fiduciary duty.

As a threshold matter, this Court need not reach the merits of these claims, and the Complaint must be dismissed under the doctrine of *forum non conveniens*.  A key provision contained in each of the Subscription Agreements executed by Plaintiff and other purchasers is a mandatory forum selection clause applicable to the Complaint, which requires that all claims relating to the subscription and purchase of the limited partnership interests be brought in the state courts of New York, where multiple other similar claims are already pending.

Even assuming, *arguendo*, that dismissal is not mandated based on the forum selection clause, the causes of action are nonetheless legally deficient and must be dismissed pursuant to Rule 12(b)(6).  The Texas Securities Act ("TSA") claims must be dismissed because the relevant agreements provide for the application of New York law, and Texas statutory claims may not be advanced.  Plaintiff has failed to plead her TSA and common law fraud claims with particularity and, in the absence of a viable underlying claim for fraud, the civil conspiracy claim must be dismissed.  Furthermore, Plaintiff has failed to allege any facts that would support her claim for breach of fiduciary duty.

## THE PLAINTIFF'S ALLEGATIONS

The facts relevant to this motion are contained in the Complaint, which, for the purposes of this motion are deemed to be true, and the Declaration of Jennifer Bergenfeld in Support of the Motion to Dismiss ("Bergenfeld Dec.") and the Exhibits annexed thereto.[1]

This is a putative class action brought by Barasch,[2] a Florida resident, against multiple defendants, including GPB Capital and the GPB Funds.  While more hyperbolic than factual in its recitation, the Complaint attempts to allege a supposed scheme to sell limited partnership interests in the GPB Funds to the Plaintiff and others.  (Compl. ¶ 2).

According to the Complaint, in or about 2013 defendant Jeffry Schneider ("Schneider") and Schneider's company, defendant Ascendant Capital, LLC ("Ascendant"), "partnered" with

---

[1] A copy of the Complaint is annexed as Exhibit A to the Bergenfeld Dec.

[2] Although the Complaint is brought in the name of Barasch, the Complaint also states that Barasch is acting through her sons, Jeffrey and Phillip Barasch "in their capacities as powers of attorney and/or trustees of the Millicent Barasch Trust."  There is no allegation, however, that the Millicent Barasch Trust owns a limited partnership interest in any of the GPB Funds, nor any allegation that either Jeffrey or Phillip have the authority to act on behalf of Barasch individually.

defendant David Gentile ("Gentile") to form GPB Capital.  It is alleged  that GPB Capital, acting as the general partner of the GPB Funds, Gentile and Schneider went on to promote the various GPB Funds through a pattern of misrepresentations and omissions.  According to the Complaint, the fraudulent statements and omissions were contained in "public documents provided to investors and potential investors."  (Compl. ¶ 105).   Specifically, Plaintiff alleges that the offering documents were misleading in that: a) they stated that the GPB Funds were providing an 8% annual dividend when, in fact, the GPB Funds were generating little or no return; b) they omitted to disclose that the 8% annual dividend was being taken from other investors' capital or from the investor's own capital; c) they stated that the GPB Funds might make distributions out of capital investment, rather than stating that the GPB Funds had been making such distributions out of capital investments and intended to do so going forward; d) they stated that investors had received "substantial annual dividends on top of capital investment," when in fact the capital of those investors had been reduced to fund the dividend; and e) they omitted to disclose that the underwriters issuing the limited partnership interests "were controlled by the same principals as the Funds themselves."  (Compl. ¶ 105).

In addition to the alleged misstatements, the Complaint makes a number of other broad and unsupported allegations.  The Complaint states that the "GPB Funds were a scam," stating that the payments made to investors were being paid out of investment capital, and thereby constituted a "Ponzi" scheme (Compl. ¶¶ 53-60); that excessive fees, which were disclosed in the PPMs (Compl. ¶ 62), were paid out of the proceeds of the investments (Compl. ¶¶ 61-66); and that the limited partnership interests being sold were "improper unregistered securities." (Compl. ¶¶ 67-71).   The Complaint also alleges that defendant Gentile engaged in self-dealing transactions by "having GPB Capital purchase entities for the GPB Funds that were owned by

Gentile and his associates." (Compl. ¶ 72).  In support of this allegation, Plaintiff cites to two transactions, in May 2013 and February 2014 – almost four years prior to any investment by the Plaintiff – in which GPB Automotive purchased entities in which Gentile held a less than 3% interest and which owned automotive dealerships.  (Compl. ¶¶ 72-79).

## THE CLAIMS ASSERTED

From these facts, Plaintiff has asserted 12 causes of action.  Count 1 asserts a claim against all defendants except the GPB Funds for civil conspiracy under Texas law. Count 2 asserts a claim for fraud in connection with the sale of the limited partnership interests against GPB Capital, the GPB Funds and others, while Count 3 asserts a claim for substantially assisting in that alleged fraud against the underwriters and auditors. Count 4 asserts a claim against GPB Capital and the "GPB Principals," for breach of fiduciary duty for, *inter alia*, their alleged failure to disclose that the GPB Funds were being operated as a "Ponzi" scheme, as well as their failure to disclose alleged conflicts of interest in connection with the sale of the limited partnership interests and for engaging in self-dealing transactions, while Count 5 asserts a claim against multiple defendants for substantially assisting in the breach of fiduciary duty.  Count 6 asserts a claim against the auditors and fund administrators for negligence.  Count 7 asserts a claim against GPB Capital and the GPB Funds for fraud under the TSA, while Count 8 asserts a claim against the non-GPB defendants for aiding and abetting that alleged fraud.  Count 9 asserts a claim against individual defendants for Control Person liability. Count 10 asserts a claim against GPB Capital and the GPB Funds for the sale of unregistered securities under the TSA, while Count 11 asserts a claim against the auditors and fund administrators for aiding and abetting that unregistered sale.  Finally, Count 12 asserts a claim against individual defendants for Control Person liability.

## PLAINTIFF AGREED THAT NEW YORK
## WOULD BE THE FORUM FOR LITIGATION
## AND THAT NEW YORK LAW WOULD APPLY

According to the Complaint, Barasch purchased limited partnership units in GPB Automotive Portfolio, LP in 2016 and 2017, in GPB Holdings II, LP in 2017, and in GPB Waste Management Fund, LP in 2017 and 2018.  In connection with each of her purchases of limited partnership interests, Plaintiff executed a series of substantially similar subscription agreements (the "Subscription Agreements") (Bergenfeld Dec. ¶¶ 3, 5 & 7 and Exhibits B, D & F annexed thereto).  Each of the Subscription Agreements executed by Barasch contain both a forum selection clause as well as a New York choice of law provision.  Paragraph 40(b) of each of the "Subscription Agreement Terms and Conditions" provides:

> Venue for any litigation arising out of, under, or in connection with this Agreement will lie in the state courts having jurisdiction over such matters located in New York County, New York.

(Paragraph 40(b) will hereafter be referred to as the "Forum Selection Clause" or "Clause").

Paragraph 40(a) of those agreement provides that:

> This Agreement will be enforced, governed and construed in all aspects in accordance with the laws of the State of New York, without regard to that state's conflicts of law provisions.

(Bergenfeld Dec. ¶¶ 3, 5, & 7 and Exhibits B, D & F annexed thereto).

Limited Partnership Agreements of GPB Automotive Portfolio, LP, GPB Holdings II, LP, and GPB Waste Management, LP (the "LPAs"), appended to the Private Placement Memorandums for each entity, provide for the application of Delaware law to claims arising under that Agreement.  Paragraph 13.3 of the LPAs provides that:

> This Agreement and the rights of the parties hereunder shall be governed by, interpreted and enforced in accordance with, the internal laws (exclusive of the choice of law provisions thereof) of

the State of Delaware as to all matters, including matters of
validity, construction, effect, performance and remedies.

(Bergenfeld Dec. ¶¶ 4, 6 & 8 and Exhibits C, E & G annexed thereto).

## THE PENDING NEW YORK ACTIONS

Prior to Plaintiff's filing, on August 6, 2019, a putative class action was commenced in

the Supreme Court of the State of New York, County of New York, entitled Younker v. GPB

Capital Holdings, LLC., Index No. 157679/2019.  (A copy of the Younker complaint is annexed

as Exhibit H to the Bergenfeld Dec.).  There, as herein, the plaintiffs allege that the GPB

Defendants defrauded investors by making material misrepresentation and omissions regarding

its Funds. Among the named defendants are GPB Capital, four of the GPB Funds, Axiom,

Ascendant Capital, and Ascendant Alternative Strategies ("AAS"), and individuals including

Gentile, Schneider and other current and former GPB employees. (Younker Compl. ¶¶ 20-34.)

On December 6, 2019, another putative class action was commenced in the New York

Supreme Court, entitled Golder v. GPB Capital Holdings, LLC., Index No. 657232/2019.  (A

copy of the Golder complaint is annexed as Exhibit I to the Bergenfeld Dec.).  That Complaint

similarly alleges a fraudulent scheme on the part of the GPB Defendants and others and names as

defendants GPB Capital, five of the GPB Funds, Axiom, Ascendant Capital, and AAS, and

individuals including Gentile, Schneider as well as other current and former GPB employees.

By Order of the Hon. Andrew S. Borrok, Justice of the New York Supreme Court,

entered on or about February 19, 2020, the Golder and Younker actions were consolidated, and

an amended consolidated complaint is pending.

In addition to the pending class actions, a derivative action based on the same factual

arguments, entitled Galen G. Miller, et al. v. GPB Capital Holdings, LLC, et al., (Sup. Ct., NY

County Index No.: 656982/2019) is also pending in the New York State Supreme Court, having

been commenced on November 25, 2019.  (A copy of the Amended Complaint in <u>Miller</u> is annexed as Exhibit J to the Bergenfeld Dec.)

<u>**ARGUMENT**</u>

I.      **THE CLAIMS AGAINST THE GPB DEFENDANTS
         <u>MUST BE PURSUED IN THE NEW YORK STATE COURTS</u>**

This Court need not decide whether Plaintiff has set forth any actionable claims because none of these claims are properly before this Court.  Plaintiff agreed that any claim "arising out of, under, or in connection with" the Subscription Agreement, had to be litigated in the New York State Supreme Court.  Such provision mandates that this Court dismiss these claims against GPB Capital and the GPB Funds.

The appropriate way to enforce a forum selection clause is through the application of 28 U.S.C. § 1404(a) where the clause specifies a federal district, and through the doctrine of *forum non conveniens* where the clause points to a state or foreign forum.  <u>Atl. Marine Const. Co. v. U.S. Dist. Ct.</u>, 571 U.S. 49, 60 (2013).

A.  <u>**The Forum Selection Clause is Mandatory**</u>

The first step in deciding whether to enforce a forum selection clause is to determine whether the clause is "mandatory" or "permissive." <u>See</u> <u>Caldas & Sons, Inc. v. Willingham</u>, 17 F.3d 123, 127 (5th Cir.1994); <u>Saye v. First Specialty Ins. Co.</u>, No. 3:14-CV-202-M, 2014 U.S. Dist. LEXIS 48839, at *3 (N.D. Tex. Apr. 9, 2014). To do so, "courts must examine the language of the clause and determine whether or not the forum selection clause evidences an intent of the parties to limit the scope of jurisdiction or venue to a particular forum, or whether an ambiguity exists." <u>Wolfe v. CareFirst of Maryland, Inc.</u>, No. 4:09-CV-492, 2010 U.S. Dist. LEXIS 48842, at *3 (E.D. Tex. Apr. 27, 2010).  For a forum selection clause to be deemed mandatory, the clause must "must contain 'exclusive language' and show that the parties intended the named

location to serve as the forum for disputes arising out of the contract."  Bustos v. Dennis,  No. SA-17-CV-39-XR, 2017 US Dist LEXIS 38533, at *5 (W.D. Tex. Mar. 17, 2017) (internal citation omitted); see Morgan-Rinehart v Van De Perre, No. A-16-CA-01327-SS, 2017 U.S. Dist. LEXIS 56392, at *15 (W.D. Tex. Apr. 12, 2017).  Once found to be mandatory, the Fifth Circuit has held, courts "apply a 'strong presumption' in favor of enforcing mandatory forum-selection clauses."  Al Copeland Invs., L.L.C. v. First Specialty Ins. Corp., 884 F.3d 540, 543 (5th Cir. 2018); Weber v. PACT XPP Tech., AG, 811 F3.d 758, 773 (5th Cir. 2016).

The Forum Selection Clause provides that venue "will lie" in the New York state courts. Courts have held that similar "will" language in forum clauses renders a forum selection clause mandatory.  See Morgan-Rinehart, 2017 U.S. Dist. LEXIS 56392, at *15 (clause providing that "any legal action arising out of this Settlement Agreement will be in the Montana Fourth Judicial District Court, Missoula County" was mandatory); Wolfe, 2010 U.S. Dist. LEXIS 48842, at *10 (clause stating, "[a]ll actions at law or equity arising from or out of this Policy will be brought and maintained in the State of Maryland," was mandatory).

In addition, the "exclusive language" requirement is satisfied by the term "any litigation." Morgan-Rinehart, 2017 U.S. Dist LEXIS 56392, at *15, citing Bustos, 2017 U.S. Dist. LEXIS 38533, at *2 (finding forum selection clause stating "[a]ny litigation proceeding will be governed by and in the State of Nevada" was mandatory); see also The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 20 (1972) (finding the clause stating "[a]ny dispute arising must be treated before the London Court of Justice" was "clearly mandatory and all-encompassing").

### B.  The Forum Selection Clause Encompasses the Claims Asserted

The Forum Selection Clause covers the claims and parties involved in the claims asserted against the GBP Defendants.  The clause is broadly worded, covering "any litigation arising out

of, under, or in connection with" the Subscription Agreement, the operative document through which the Plaintiff obtained her interests in the GPB Funds.

A broadly worded forum selection clause is "'not limited solely to claims for breach of the contract that contains it.'" Wellogix, Inc. v SAP Am., Inc., 58 F.Supp. 3d 766, 778 (S.D. Tex. 2014), quoting, MaxEn Capital. LLC v. Sutherland, No. 08-3590, 2009 U.S. Dist. LEXIS 29308 (S.D. Tex. Apr. 3, 2009).  Rather, the use, as is the case herein, of "the phrase 'arising in connection with' has been found to reach 'every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract.'" Id. at 778; see Blueskygreenland Envtl. Solutions, LLC v. Rentar Envtl. Solutions, Inc., 4:11-cv-01745, 2011 US Dist. LEXIS 146061, at *10 (S.D. Tex. Dec. 20, 2011).

Where, as here, a forum selection clause is broad, it will be applied to "every dispute between the parties having a significant relationship to the" Subscription Agreement.  iiiTec, Ltd. v. Weatherford Tech. Holdings, LLC, 2019 US Dist. LEXIS 53961, at *24 (S.D. Tex. Mar. 29, 2019) (internal citation omitted).  In iiiTec, the Court held a forum clause applicable to all claims arising under a contract to apply as well to a claim for tortious interference with that contract since "iiiTec's tortious interference claim depends on the existence of a contractual relationship between iiiTec and Weatherford Switzerland and involves the same operative facts as its breach of contract claim." Id. at *25.

All of the claims asserted are based on the supposed misrepresentations and omissions in the offering documents in connection with the sale of the limited partnership interests.  All of the

claims asserted are closely related to and arise in connection with the offering pursuant to the Subscription Agreement, and are, accordingly, subject to its terms.[3]

### C. Enforcement of the Forum Selection Clause is Reasonable

Forum selection clauses are prima facie valid and should generally be enforced "unless [the opposing party] could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for reasons as fraud or overreaching." The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972); Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 583, 593-94 (1991); Ginter ex rel. Ballard v. Belcher, 536 F.3d 439, 441 (5th Cir. 2008); Kevlin Servs. Inc. v. Lexington State Bank, 46 F.3d 13, 15 (5th Cir. 1995).   A forum selection clause will only be found unreasonable when the opponent demonstrates that: (1) it is the product of fraud or overreaching, (2) the plaintiff "will for all practical purposes be deprived of his day in court," (3) "the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy," or (4) enforcement of the clause "would contravene a strong public policy of the forum state." Haynsworth v. Corporation, 121 F.3d 956, 963 (5th Cir. 1997) (internal citation omitted).

---

[3] Although only GPB Capital and the GPB Funds are parties to the Subscription Agreements with Plaintiff, the claims against the other defendants arise out of the same operative event: the sale of the limited partnership interests to the Plaintiff and others similarly situated.  Parties closely related to the transaction at issue can be bound by (and take advantage of) a forum clause. See JetPay Merchant Servs., LLC v. Merrick Bank Corp., No. 3:13-cv-3101-L-BN, 2014 U.S. Dist. LEXIS 26231, at *13-14 (N.D. Tex. Feb. 28, 2014) ("Courts have ruled that 'a range of transaction participants, parties and nonparties, should benefit from and be subject to forum selection clauses.'[Citations omitted].   Although WLES is not a signatory to the agreements, its relationship with the JetPay is so inextricably intertwined that it should be subject to the forum-selection clause"); Alternative Delivery Solutions v. R.R. Donnelley & Sons Co., No. SA-05-CA-0172-XR, 2005 US Dist LEXIS 15949, at *47-48 (W.D. Tex. July 8, 2005) ("a nonsignatory to a contract containing a forum selection clause may enforce the clause if the nonsignatory is 'closely related' to a signatory or the alleged conduct is closely related to the contractual relationship").

Plaintiff does not allege that the inclusion of the Forum Selection Clause was the result of fraud.  In this regard, general allegations of fraud are insufficient.  Rather, claims of fraud or overreaching "must be aimed straight at the [forum selection] clause in order to succeed." Haynsworth, 121 F.3d at 963; see GE Capital Corp. v. Mackzilla, LLC, No. H-15-2425, 2016 U.S. Dist. LEXIS 34752, at *10 (S.D. Tex. Mar. 17, 2016) ("a party resisting enforcement of a forum selection clause must prove that the clause itself was the product of fraud: allegations relating to the contract as a whole are inapposite.") (internal quotation omitted).

Plaintiff agreed to the New York State Supreme Court as the forum for any litigation when she entered into the Subscription Agreement.  "Given that any inconvenience of the forum was foreseeable at the time of contracting, [citation omitted] to invalidate a forum-selection clause predicated on the 'grave inconvenience' or 'fundamental unfairness' of a preselected forum, Plaintiffs must demonstrate they will 'for all practical purposes be deprived of [their] day in court.'" Mendoza v. Microsoft, Inc., 1 F.Supp. 3d 533, 545 (W.D. Tex. 2014), quoting Haynsworth, 121 F.3d at 963.  That is not the case here.

There are two substantially similar class actions, as well as a derivative action, pending in the New York State Supreme Court.  Plaintiff, a Florida resident with no apparent connection to the State of Texas, and a putative class with potential members throughout the United States, can litigate these claims as easily in New York, where they can obtain full relief, as they can in Texas.  The application of New York law, which the Plaintiff and other investors agreed to in the Subscription Agreement, is not "fundamental[ly] unfair" such that it "will deprive the plaintiff of a remedy." Haynsworth, 121 F.3d at 963.  The Fifth Circuit has long endorsed the "party autonomy rule," pursuant to which parties can agree to be governed by the law of another state. Cardoni v. Prosperity Bank, 805 F.3d 573, 580 (5th Cir. 2015).

Enforcing the Forum Selection Clause would not contravene any Texas public policy. Haynsworth, 121 F.3d at 963. The Texas Supreme Court has held that "policy considerations weigh in favor of enforcing valid forum-selection clauses absent a statute that requires suit to be brought or maintained in Texas." In re Int'l Profit Assocs., Inc., 274 S.W.3d 672, 680 (Tex. 2009). There is no statute that mandates Plaintiff to bring the instant action in Texas.

"'[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" Atl. Mar. Constr. Co., 571 U.S. at 63 (internal citations omitted); Weber v. PACT XPP Tech., AG, 811 F.3d 758, 766, n.6 (5th Cir 2016) ("[t]he factors that courts consider in evaluating the propriety of a § 1404(a) transfer and a[] [forum non conveniens] dismissal are substantively identical"). Where there is an enforceable forum selection clause, plaintiff's choice of forum "merits no weight," and plaintiff has the burden of establishing that dismissal based on the forum selection clause is unwarranted. Atl. Mar. Constr. Co., 571 U.S. at 63; Weber, 811 F.3d at 767.

Texas has, at best, a limited interest in this case.  GPB Capital and the GPB Funds are Delaware entities and GPB Capital and its principals are based in New York. (Compl. ¶ 12). Most of the key individuals are located in New York.  Plaintiff is a resident of Florida with no connection to Texas and claims to be acting through her children whose residency is unknown. (Preamble to Complaint).  There is no local interest which would warrant this action proceeding in Texas.  See In re TS Tech United States Corp., 551 F.3d 1315, 1321 (Fed. Cir. 2008).

## II.      THE CLAIMS MUST BE DISMISSED

Even were this Court to reach the merits of the asserted claims, they must nonetheless be dismissed as legally insufficient under Federal Rule of Civil Procedure 12(b)(6).

### A.   New York Law Applies to These Claims

The Texas Supreme Court has held that the contracting parties' choice of law will be respected "if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." In re J. D. Edwards World Solutions Co., 87 S.W.3d 546, 549 (Tex. 2002). The parties' choice of law is given effect "even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue," as long as the chosen law has a substantial relationship to the parties or the underlying transaction. Id.; see also Crawford Professional Drugs, Inc. v. CVS Caremark Corp., 748 F.3d 249, 258 (5th Cir 2014).[4]

The choice-of-law clause of each of the Subscription Agreements mandates the application of New York law.  That clause provides that all claims arising out of the Subscription Agreement "be enforced, governed and construed in all respects in accordance with the laws of the State of New York without regard to that state's conflicts of law provisions." (Bergenfeld Dec.¶3, 5, 7 and Exhibits B, D & F annexed thereto) (emphasis added).  Such clause, and its use of such phrases as "in all respects" and "without regard to that state's conflicts of law

---

[4] In deciding a motion to dismiss pursuant to Rule 12(b)(6), this Court may consider "documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim."  Scanlan v. Texas A&M Univ., 343 F.3d 533, 536 (5th Cir 2003); Schott v. Massengale, No. 18-759-JWD-RLB, 2019 U.S. Dist. LEXIS 166737, at *16-17 (M.D. La. Sep. 27, 2019). Here, plaintiff has acknowledged having purchased her limited partnership interests which were effectuated through her execution of the Subscription Agreements.

provisions" mandate that the choice-of-law clause applies to Plaintiff's Texas securities law allegations, and each of her other fraud and related claims, all of which arise from the purchase of the limited partnership interests. See Crawford Professional Drugs, 748 F.3d at 257 (enforcing the choice of law clause, which states "[u]nless otherwise mandated by applicable Law, the Agreement will be construed, governed, and enforced in accordance with the laws of the State of Arizona without regard to choice of law provisions."); AlliantGroup, L.P. v. Mols, No. H-16-3114, 2017 U.S. Dist. LEXIS 12133, at *18-19 (S.D. Tex. Jan. 30, 2017).[5]

Application of New York law is not unfair. Plaintiff is a Florida resident, and the members of the putative class reside throughout the United States and New York contacts with this action predominate. The Subscription Agreements, LPAs and PPMs that Plaintiff claims to have relied on in deciding to invest in GPB Funds originated from New York (as indicated by the address of the Subscription Agreements). Plaintiff does not allege that she acquired her limited partnership interests from a broker-dealer in Texas (and, indeed, the Complaint is silent on this issue). (See Compl. ¶¶ 97-99.) Nor can Plaintiff claim that her injury occurred in Texas. Plaintiff cannot show that New York has no substantial relationship to the parties or the transaction, or that Texas has a more significant relationship or that Texas has a fundamental policy that would be contravened by applying New York law. See O'Connor v. Cory, No. 3:16-CV-1731-B, 2018 U.S. Dist. LEXIS 180227, at *28 (N.D. Tex. Oct. 19, 2018).[6]

---

[5] In addition, Texas has a strong policy of respecting and enforcing contracting parties' choice of law clauses. McKissock, LLC v. Martin, 267 F. Supp. 3d 841, 849 (W.D. Tex. 2016).

[6] The same result would obtain even in the absence of the choice-of-law provision in the Subscription Agreement. New York, and not Texas, is the state with the predominant connection to Plaintiff's claims. Applying traditional choice-of-law analysis, New York would be the state whose law would be applicable to these claims. See Grant Thornton LLP v Suntrust Bank, 133 S.W.3d 342, 358 (Tex. Ct. App. 2004) ("In determining choice-of-law issues, Texas courts apply

"[W]here the parties have chosen the governing body of law, honoring their choice is necessary to ensure uniform interpretation and enforcement of that agreement and to avoid forum shopping." <u>Motorola Credit Corp. v. Uzan</u>, 388 F.3d 39, 51 (2d Cir. 2004).  Plaintiff agreed to the application of New York law and it must be applied in this case.

### B.  Application of New York Law Mandates <u>Dismissal of the Texas Securities Act Claims</u>

Having agreed to the application of New York law, the Plaintiff cannot now forum shop and assert securities law claims based on Texas statutory law.  <u>O'Connor v. Cory</u>, No. 3:16-CV-1731-B, 2018 U.S. Dist. LEXIS 180227, at *29 (N.D. Tex. Oct. 19, 2018).  In <u>O'Connor,</u> the Court considered the defendant's contention that because the parties had entered into a contract which provided for the law to be applied, that "enforcing the parties' choice of Delaware law bars the Plaintiffs from bringing a claim under the Texas Securities Act."  <u>Id</u>. In reaching that determination, the Court held that "refusing to apply the parties' chosen law 'would contradict [the forum state's] policy to respect the chosen law of the contracting parties.'" <u>Id</u>, at *32.  The Court went on to state that, "Texas has a strong policy of respecting and enforcing contracting parties choice-of-law clauses, as long as the transaction bears a reasonable relation to that state." <u>Id</u>. at 31; <u>see</u> <u>Harland Clarke Holdings Corp. v. Milken</u>, 997 F.Supp. 2d 561, 589 (W.D. Tex. 2014) ("it is the choice-of-law clause . . . that purportedly precludes Plaintiffs from bringing Texas statutory claims"); <u>Young v. ValtX Holdings, Inc.</u>, 336 S.W.3d 258, 263 n.6 (Tex. App. 2010) .

---

the most-significant-relationship test as set out in the Restatement (Second) of Conflict of Laws").

Full relief is available to the plaintiff under New York law.  Plaintiff may not avoid the contractual terms she agreed to and otherwise plead claims under Texas statutory law. Accordingly, even if this Court were to elect to retain jurisdiction over this case, the 7th through 12th Causes of Action asserted under the TSA must be dismissed.

### C.  Plaintiff Has Failed to Plead Fraud with Particularity

In Count 2, the Plaintiff has asserted a claim for fraud, alleging that GPB Capital, the GPB Funds, the "GPB Principals"[7] and the "GPB Owners"[8] made false representations of material facts in connection with the limited partnership interests purchased by the Plaintiff and the putative class.  Plaintiff alleges that these defendants made material misrepresentations "regarding the nature of the limited partnership interests offered for sale, including but not limited to .  .  .that the GPB Funds were and would return 8% return on investment proceeds. Count 3 asserts a claim for substantial assistance with that fraud.

To state a claim for fraud under New York law, which is applicable to this claim, the Plaintiff must allege "a misrepresentation or a material omission of fact which was known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or omission, and injury." VisionChina Media Inc. v. Shareholder Representative Servs., LLC, 109 A.D.3d 49, 57, 967 N.Y.S.2d 338, 343 (1st Dep't 2013).  Fraud under Texas law is substantially similar.  See e.g.

---

[7] The "GPB Principals" are defined by Plaintiff in her Complaint as consisting of Gentile, William Jacoby, Minchung Kgil, Manuel Fredercio Vianna, Dotty J. Bollinger, Michael Frost, Evan Myrianthopoulos, Abhaya Shrestha, Michael Cohn, Stephen Frangioni and Scott Naugle.

[8] The "GPB Owners" are defined by Plaintiff in her Complaint as Schneider, Martino, Gentile, DJ Partners LLC, and MR Ranger LLC.

Rivs. & Hills Hospitality Group, LLC v. GTB Rest. Texas, LLC, No. A-19-CV-00519-SH, 2020 U.S. Dist. LEXIS 4219, at *8 (W.D. Tex. Jan. 10, 2020).

Pursuant to Rule 9(b), a "heightened level of pleading is imposed for fraud claims," requiring "'a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" Dorsey v. Portfolio Equities, Inc, 540 F.3d 333, 339 (5th Cir. 2008) (internal citation omitted). "Both federal securities claims and state-law fraud claims are subject to the pleading requirements of Rule 9(b)." Id. at 338-339. Claims for fraud under the TSA must similarly be pled with particularity. See e.g. Moore v. Payson Petroleum Grayson, LLC, 2018 U.S. Dist. LEXIS 21622, at *21-22 (N.D. Tex. Jan. 22, 2018) (dismissing TSA claims under Rule 9(b), stating that "the lack of information of exactly who made them or when and where they were made fails to state a claim with the sufficient particularity required under Rule 9(b)").

Plaintiff's fraud-based claims are deficient with respect to the "'the who, what, when, where, and how' of the events at issue." Dorsey, 540 F.3d at 339 (internal citation omitted).[9] While the Complaint is replete with generalized allegations of misstatements occurring over multiple years – with the supposed statements contained in "public documents provided to investors and potential investors" from 2013 onward (Compl. ¶¶ 105-106), Plaintiff fails to identify with the specificity required by Rule 9(b) the particular GPB statements or omissions that it contends induced her to purchase her limited partnership interests in 2017 and 2018.

---

[9] "Group pleading," as utilized by the plaintiff, who does not identify the makers of specific fraudulent statements and instead speaks in terms of "defendants," does not meet the requirements of Rule 9(b)." Wu v. Tang, No. 3:10-CV-0218-O, 2011 U.S. Dist. LEXIS 4489, at *13-14 (N.D. Tex. Jan. 14, 2011).

Some of the documents included within the scope of the Complaint were issued after the Plaintiff's purchases and could not have served to induce Plaintiff to act.  (See e.g. Compl. ¶¶ 60, 92). Others were issued more than three or four years before her purchases.  (See e.g. Compl. ¶¶ 45-48).  Nowhere does the Plaintiff claim to have read a single document, much less to have relied on any particular document or statement.

### D.  <u>Plaintiff Has Failed to Sufficiently Plead Reliance</u>

With respect to Count 2, Plaintiff's claim is particularly deficient as to the allegations of reliance. "[T]he particularity requirement of Rule 9(b) extends to allegations of reliance," and "[p]laintiffs must 'describe . . . the circumstances of [their] reliance' with particularity.'" <u>Alameda Cnty. Employees' Retirement Assn. v. BP p.l.c.</u>, 2013 U.S. Dist. LEXIS 171459, at *112-113 (S.D. Tex. Dec. 2, 2013).  Plaintiff does not allege that she read the PPMs or relied on any specific misrepresentation.  Rather, allegations of reliance are limited to a few boiler-plate assertions: in paragraphs 150-151 the Plaintiff alleges that the "false statements and omissions" were made "for the purpose of inducing" Plaintiff and others to invest, and that Plaintiff and others "justifiably relied on those representations."

Whether viewed under New York or Texas law, the conclusory allegations of this Complaint which say nothing more than that Plaintiff "relied," are insufficient.  <u>See, e.g.</u> <u>In re Fyre Festival Litig.</u>, 399 F.Supp. 3d 203, 216-217 (S.D.N.Y. 2019) ("plaintiffs' statement of reliance is conclusory and generalized to all alleged misstatements and omissions. . . Because there is no assertion that any plaintiff saw, read, or otherwise noticed Atkins' April 27, 2017 Tweet, there is no allegation that 'there was 'actual reliance' all'"); <u>In re Barclays Liquidity Cross & High Frequency Trading Litig.</u>, 126 F Supp 3d 342, 370 (S.D.N.Y. 2015);  <u>Granite Partners, L.P. v. Bear, Stearns & Co.</u>, 58 F Supp 2d 228, 258 (S.D.N.Y. 1999); <u>Knutson v.</u>

Harris, No. 3:17-CV-2618-BK, 2018 U.S. Dist. LEXIS 152409, at *17 (N.D. Tex. Sep. 6, 2018) ("Crucially lacking are any allegations tying Knutson and Barry's decisions to invest in Wireless Power to any of the specific alleged misrepresentations identified in the Second Amended Complaint"); Paselk v. Bayview Loan Servicing, LLC, No. 6:16-cv-77 MHS-JDL, 2016 U.S. Dist. LEXIS 157173, at *18 (E.D. Tex. Aug. 23, 2016).

### E.  Plaintiff Has Failed to Plead a Claim for Conspiracy

Count 1 of the Complaint alleges a conspiracy amongst the defendants to "bring in investment proceeds under false and misleading circumstances, and to then appropriate those assets." (Compl. ¶143).  Such claim is governed by New York law, as it arises out of the alleged scheme purportedly engaged in by the defendants in connection with the solicitation of investments.

To plead civil conspiracy under New York law, Plaintiff must allege a cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement.  McSpedon v. Levine, 158 A.D.3d 618, 621, 72 N.Y.S.3d 97 (1st Dep't 2018); 1766-68 Assocs., LP v. City of New York, 91 A.D.3d 519, 520, 937 N.Y.S.2d 33, 35 (1st Dep't 2012); Bitter v. Renzo, 39 Misc. 3d 1208(A), 971 N.Y.S.2d 69 (Sup. Ct. N.Y. Cty. 2012), aff'd, 101 A.D.3d 465, 955 N.Y.S.2d 332 (1st Dep't 2012).  Since "it is well settled that New York does not recognize an independent civil tort of conspiracy," Hoeffner v. Orrick, Herrington & Sutcliffe LLP, 85 A.D.3d 457, 458 (1st Dep't 2011), claims of civil conspiracy which do not allege, or which insufficiently allege, an underlying tort must be dismissed for failure to state a claim.  Linden v. Lloyd's Planning Serv., Inc., 299 A.D.2d 217, 218, 750 N.Y.S.2d 20, 21 (1st Dep't 2002); Le Sannom Bldg. Corp. v. Dudek, 177 A.D.2d 390, 391, 576 N.Y.S.2d 133, 134 (1st Dep't 1991).

As set forth above Plaintiff's claims under both the TSA and the common law must be dismissed.  Similarly, Plaintiff's failure to adequately set forth any independent underlying tort mandates dismissal of her claim for civil conspiracy. Linden, 299 A.D.2d at 218.[10]

### F.  **The Breach of Fiduciary Duty Claim is Legally Insufficient**

In Count 4 of the Complaint, the Plaintiff claims that GPB Capital and the GPB Principals owed "fiduciary duties to the investors who bought limited partnerships in the GPB Funds." (Compl. ¶ 162).  The LPAs, which govern the rights of limited partners, contain a choice of law provision that provides: "This Agreement and the rights of the parties hereunder shall be governed by, interpreted and enforced in accordance with, the internal laws (exclusive of the choice of law provisions thereof) of the State of Delaware as to all matters, including matters of validity, construction, effect, performance and remedies." LPA ¶ 13.3 (Bergenfeld Dec.¶¶ 4, 6 & 8 and Exhibits C, E & G annexed thereto).  Accordingly, this claim must be analyzed under Delaware law.

Plaintiff's breach of fiduciary duty claim is based on three components: 1) the operation of the GPB Funds as a "Ponzi" scheme "extracting proceeds from investors for their own gain": 2) the failure of GPB Capital and the GPB Owners to disclose their conflicts of interest"; and 3) the consummation of "self-dealing" transactions.  (Compl. ¶ 163).

The purported failure of GPB Capital and the GPB Owners to disclose their alleged conflicts of interest and their relationship and alleged ownership in "the lead broker and underwriter that was selling the GPB Funds' securities" is alleged to have arisen in connection

---

[10] Similarly, under Texas law, civil conspiracy is based on "a theory of vicarious liability and . . . requires some underlying wrong."  Agar Corp., Inc. v Electro Circuits Intl., LLC, 580 S.W.3d 136, 141 (Tex. 2019).  In the absence of a viable underlying claim for fraud, the conspiracy claim cannot stand.

with the offering of the limited partnership interests to the Plaintiff.  Such non-disclosure cannot form the basis for a fiduciary duty claim since at the time of the supposed non-disclosures, the Plaintiff was not yet a limited partner, and, as a result, no fiduciary duty was owed to her.  "It is well established in Delaware that to successfully state a claim for breach of the fiduciary duty of disclosure, the plaintiff must have been owed a fiduciary duty at the time of the alleged breach." Leung v. Schuler, No. 17089, 2000 Del. Ch. LEXIS 41, at *19-20 (Ch. Feb. 29, 2000).  See Sanders v. Devine, No. 14679, 1997 Del. Ch. LEXIS 131, at *16  (Ch. Sep. 24, 1997)  (where "plaintiff was not a stockholder at the time the prospectus was issued," "there can be no liability under any fiduciary duty theories for the disclosures made in connection with the offering").

Similarly, claims based on alleged self-dealing transactions in 2013 and 2014 cannot support a claim for breach of fiduciary duty for multiple reasons. (See e.g. Compl. ¶¶ 45, 73-78). In the first place, the Plaintiff was not a limited partner at the time of the alleged transactions (and would not acquire her interests until almost four years later).  For the reasons set forth above, transactions which occurred long before any fiduciary duty existed cannot form the basis for a breach of fiduciary duty claim.

In addition, fiduciary duty claims based on events in 2013 and 2014 are time barred, under Delaware law.  See 10 Del. C. § 8106(a); In re Tyson Foods, Inc. Consol. S'Holder Litig., 919 A.2d 563, 584 (Del. Ch. 2007) (a three-year limitations period applies to claims sounding in breach of fiduciary duty).

Finally, as to the claim based on an alleged "Ponzi" scheme, to the extent such claim is based on failures to disclose this supposed scheme in the offering documents, for the reasons set forth above, such claim cannot be pursued as the Plaintiff was not a limited partner at the time of the alleged misstatement.

To the extent that Plaintiff's claim as to a "Ponzi" scheme is read as being a claim for misconduct after she became a limited partner, such claim must be dismissed because it can only be pursued derivatively. The Supreme Court of Delaware in <u>Tooley v. Donaldson, Lufkin, & Jenrette, Inc.</u>, held that the question of whether a claim is direct or derivative "must turn *solely* on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" 845 A.2d 1031, 1033 (Del. 2004).

If Plaintiff's claim is read as being one asserting that the manner in which GPB Capital and the GPB Owners managed the GPB Funds was improper, and that they improperly utilized the GPB Funds and their assets, such claim belongs to the Funds and not to the Plaintiff or other individuals. "Delaware courts have long recognized that actions charging 'mismanagement which depress[] the value of stock [allege] a wrong to the corporation; *i.e.*, the stockholders collectively, to be enforced by a derivative action.' [Citations omitted]. Where a plaintiff shareholder claims that the value of his stock will deteriorate and that the value of his proportionate share of the stock will be decreased as a result of director mismanagement, his cause of action is derivative in nature." <u>Kramer v. W. Pac. Indus., Inc.</u>, 546 A.2d 348, 353 (Del 1988); <u>Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.</u>, 936 F.Supp.2d 376, 391 (S.D.N.Y. 2013) (acts, such as the "creation of false documents and refusal to provide NHI's financial information" were derivative in nature because the underlying claim was that the defendant's "actions reduced the value of their NHI shares" and, under Delaware law, "cannot form the basis of a direct breach of fiduciary duty claim").

Plaintiff has made no effort to assert this claim derivatively and has failed to comply with Del. Ch. Ct. R. 23.1, which mandates that "stockholders must either demand that the board of

directors pursue the claim on behalf of the corporation, or allege that making demand on the board would have been futile," and which requires that those alleging demand futility "'must comply with stringent requirements of factual particularity that differ substantially from . . . permissive notice pleadings.'" In re Lendingclub Corp. Derivative Litig., 2019 Del. Ch. LEXIS 1347, at *18 (Ch Oct. 31, 2019) (internal citation omitted).[11]

### III.   ALTERNATIVELY, A STAY SHOULD BE GRANTED

As noted, this is but one of a number of class actions that have been commenced against GPB Capital and the GPB Funds.  All of these actions involve similar allegations of fraud in connection with the sale of limited partnership interests in the GPB Funds.  All will likely involve substantially similar discovery.

A court's authority to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Nelson v. Grooms, 307 F.2d 76, 78 (5th Cir. 1962), quoting Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)). "[A] trial court may, with propriety, ... enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd., 2011 US Dist LEXIS 41148, at *13-16 (S.D.N.Y. Apr. 15, 2011) (citations omitted) ("Since the outcome of the ongoing London Arbitration will have a significant bearing on this case, Sealion's motion for a stay is granted").

---

[11] In addition, to set forth a claim for breach of fiduciary duty based on alleged malfeasance the plaintiff must allege that the distribution of these financial statements was done in "bad faith." "'[a] plaintiff can . . . plead bad faith by alleging with particularity that a director *knowingly* violated a fiduciary duty or failed to act in violation of a *known* duty to act, demonstrating a *conscious* disregard for her duties.'"  In re GM Co. Derivative Litig., 2015 Del. Ch. LEXIS 179, at *39-40 (Ch. June 26, 2015).  No such particularized allegations are set forth.

The decision to stay "calls for the exercise of judgment which must weigh competing interests and maintain an even balance." Landis v. N. Am. Co., 299 U.S. at 254-55. Courts (in the context of parallel federal actions) grant stays "to avoid waste, to avoid trenching the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." Gill v. Ethicon Inc., 2001 U.S. Dist. LEXIS 24005, at *5-6 (W.D. La Aug. 1, 2001, Docket No. 00-2042), citing West Gulf Maritime Ass'n v. Deep Sea Local, 751 F.2d 721 (5th Cir. 1985).

In In re Countrywide Fin. Corp. Derivative Litig., 542 F.Supp. 2d 1160 (C.D. Cal 2008) the Court stayed a federal class action in favor of a prior pending Delaware state court class action.  There the putative class of plaintiffs was the same, and the claims were substantially similar.  In applying the Colorado River Doctrine, which permits the staying of a federal action in favor of a parallel state court proceeding, the Court held that "granting the stay would avoid the duplication of efforts and the risk of inconsistent results that could result from piecemeal litigation," Id. at 1169, and concluded that "[o]n balance, the realities of these cases present the requisite 'exceptional circumstances' to merit a Colorado River stay in favor of the Delaware Chancery Court action." See Rattner v. Bd. of Trustees, 611 F.Supp. 648, 653 (S.D.N.Y. 1985).

The putative class, limited partners in the GPB Funds, are the same as in Younker, Golder and DeLuca, et al. v. GPB Automotive Portfolio, LP, et al., Civil Action No.: 19-cv-10498, which is pending in the Southern District of New York, and Barasch qualifies as a member of those classes.  The claims are substantially similar and discovery in these actions will be the same.  Should this Court decline to enforce the Forum Selection Clause, it would serve no end to allow multiple similar class actions to proceed.  Accordingly, a stay of this action would be appropriate at least until such time as class determinations are made in New York.

## CONCLUSION

For the foregoing reasons the Court, in the first instance, should dismiss the Complaint based on the doctrine of *forum non conveniens*. Should the Court elect to retain jurisdiction over this matter, despite the forum selection clause, the Court should nonetheless dismiss the Complaint in its entirety based on Plaintiff's failure to state any cognizable claims for relief. Finally, in the alternative, the Court should stay the action in deference to the prior pending actions in New York.

Dated: New York, New York
      March 10, 2020

By:                **ROSENFELD & KAPLAN, LLP**

Tab K. Rosenfeld (admitted *pro hac vice*)
NY State Bar No. 2216141
Steven M. Kaplan (admitted *pro hac vice*)
NY State Bar No. 1521210
Nicole E. Meyer (admitted *pro hac vice*)
NY State Bar No. 5188479
Rosenfeld & Kaplan, LLP
1180 Avenue of the Americas, Suite 1920
New York, NY 10036
Telephone: (212) 682-1400
Facsimile: (212) 682-1100
tab@rosenfeldlaw.com
steve@rosenfeldlaw.com
nm@rosenfeldlaw.com

**REEVES & BRIGHTWELL LLP**
Beverly Reeves
TX State Bar No. 16716500
Ryan Pierce
TX State Bar No. 24035413
221 W. 6th Street, 10th Floor
Austin, Texas 78701
Telephone: (512) 334-4509
Facsimile: (512) 334-4492
breeves@reevesbrightwell.com
rpierce@reevesbrightwell.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 10, 2020, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which sends notifications of such filing to all counsel of record who have registered for electronic filing, and I hereby certify that the foregoing document was mailed by first class mail to non CM/ECF participants.

Steven M. Kaplan