# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| KINNIE MA INDIVIDUAL RETIREMENT ACCOUNT, *et al.*, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>ASCENDANT CAPITAL, LLC, *et al.*,<br><br>          Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 1:19-cv-01050-LY |
| THE STANLEY S. AND MILLICENT R. BARASCH LIVING TRUST AND LORETTA DEHAY, individually and on behalf of others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>GPB CAPITAL HOLDINGS, LLC, *et al.*,<br><br>          Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 1 :19-CV-1079-LY |

## *KINNIE MA* PLAINTIFFS' BRIEF IN OPPOSITION TO CONSOLIDATION OF THE *KINNIE MA* AND *BARASCH* PUTATIVE CLASS ACTIONS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

I.      INTRODUCTION .................................................................................................... 1

II.     PRELIMINARY STATEMENT ............................................................................. 2

III.    BACKGROUND ...................................................................................................... 4

      A.      The *Barasch* Class Action Complaint ..................................................... 4

      B.      *Barasch* Counsel's Marketing Campaign ............................................... 5

      C.      *Barasch* Engaged in Conduct Adverse to the Interests of the Class ...................... 8

IV.     ARGUMENT AND AUTHORITY ......................................................................... 9

      A.      The Class Actions Should Not Be Consolidated, the *Barasch Class Action* Should Be Stayed and the *Barasch* Plaintiffs Should Be Permitted to Pursue Their Individual Claims as They Represented to This Court They Would. ................................................................................ 9

            1.      The Standard for Consolidation. ................................................... 9

            2.      *Barasch*'s Prior Representations to the Court Preclude Consolidation ....................................................................................... 9

            3.      Multiple Conflicts Preclude Consolidation ............................... 11

                a.      Barasch's Three Conflicts ............................................... 12

            4.      Staying the *Barasch* Action From Proceeding as a Class Action is Appropriate ........................................................................ 16

V.      CONCLUSION ...................................................................................................... 17

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Cadle Co. v. Whataburger of Alice, Inc.*,
 174 F.3d 599 (5th Cir. 1999) ..................................................... 9

*Clinton v. Jones*,
 520 U.S. 681 (1997)................................................................. 16

*Fenner Invs., Ltd. v. 3Com Corp.*,
 No. 6:08-CV-61, 2008 WL 4876816 (E.D. Tex. Nov. 12, 2008) ........................... 11

*Gentry v. Smith*,
 487 F.2d 571 (5th Cir. 1973) ..................................................... 9

*In re Cardinal Health, Inc. ERISA Litig.*,
 225 F.R.D. 552 (S.D. Ohio 2005) .................................................. 12

*Keim v. ADF MidAtlantic, LLC*,
 328 F.R.D. 668 (S.D. Fla. 2018)................................................... 14

*Krim v. pcOrder.com, Inc.*,
 210 F.R.D. 581 (W.D. Tex. 2002) .................................................. 12

*Krim v. pcOrder.com, Inc.*,
 No. A 00 CA 776 SS, A 00 CA 831 SS, A 01 CA 096 SS
 2001 WL 862628 (W.D. Tex. May 14, 2001) .......................................... 11

*LeBeau v. U.S.*,
 222 F.R.D. 613 (D.S.D. 2004) ..................................................... 12

*Liu v. Aventis Pasteur, Inc.*,
 219 F. Supp. 2d 762 (W.D. Tex. 2002)............................................... 16

*Martinez v. Barasch*,
 No. 01 Civ. 2289 (MBM), 2004 WL 1367445 (S.D.N.Y. June 16, 2004) ............... 16

*Mezzalingua v. Deutsche Bank AG*,
 2006 N.Y. Slip Op. 30810 (N.Y. Sup. Ct. 2006)..................................... 15

*Nat'l Air Traffic Controllers Ass'n. v. Dental Plans, Inc.*,
 No. Civ.A. 1:05-CV-882TW, 2006 WL 584760 (N.D. Ga. Mar. 10, 2006) ............. 12

*Needbasedapps, LLC v. Robbins*,
 926 F. Supp. 2d 919 (W.D. Tex. 2013)............................................... 17

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ........................................................................................ 12

*Pan-American Tel. Co. v. Municipality of San Juan*,
  No. 09-1256 (ADC/BJM), 2011 WL 13234198 (D. P.R. Sept. 9, 2011) ................................ 12

*Rotstain v. Trustmark Nat'l Bank*,
  No. 3:09-CV-2384-N-BQ, 2020 WL 1513516 (N.D. Tex. Mar. 30, 2020) ............................ 14

*Speetjens v. Larson*,
  401 F. Supp. 2d 600 (S.D. Miss. 2005) .................................................................... 15

*Stevenson v. Goomar*,
  148 A.D.2d 217, 544 N.Y.S.2d 690 (N.Y. App. Div. 1989) .................................. 15

*Stewart v Paul, Hastings, Janofsky & Walker, LLP*,
  201 F. Supp. 2d 291 (S.D.N.Y. 2002) ..................................................................... 15

*Sutter Corp. v. P&P Indus., Inc.*,
  125 F.3d 914 (5th Cir. 1997) ................................................................................ 17

*Pigford v. Veneman*,
  355 F. Supp. 2d 148  (D.D.C. 2005) ..................................................................... 14

*W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*,
  751 F.2d 721 (5th Cir. 1985) ............................................................................... 17

*Wolf Designs, Inc. v. Donald McEvoy Ltd., Inc.*,
  341 F. Supp. 2d 639 (N.D. Tex. 2004) .................................................................. 17

**Statutes**

28 U.S.C. §§1332(d) .................................................................................................. 11

28 U.S.C. §§1332(d)(9) ............................................................................................. 11

28 U.S.C. §§1332(d)(11)(B) ...................................................................................... 11

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................. 3, 5, 8, 10

Fed. R. Civ. P. 42(a) ............................................................................................... 9

**Other Authorities**

1 McLaughlin on Class Actions: Law and Practices,
  17th Edition, §4:39 (2020)........................................................................... 12

## I.      INTRODUCTION

Plaintiffs in *Kinnie Ma Individual Retirement Account, et al. v. Ascendant Capital, LLC, et al.* (the "*Ma* Class Action")[1] file this brief in response to this Court's request for briefing with respect to the issue of whether the *Ma* Class Action should be consolidated with the putative class action captioned *Millicent Barasch Living Trust, et al., Individually, and on Behalf of All Others Similarly Situated* (the "*Barasch* Class Action"). For the reasons stated herein, the Court should decline to consolidate the two actions,[2] allow the *Ma* Class Action to proceed, and stay the *Barasch* Class Action allowing the *Barasch* Plaintiffs[3] to proceed solely with their individual claims as was suggested by their counsel in prior submissions to this Court. To the extent there is overlapping discovery among these actions in this Court, such discovery should be coordinated with protections that guard against improper sharing of certain discovery materials as described herein. In the alternative, however, should the Court deem consolidation to be the most appropriate course of action, the *Ma* Plaintiffs ask the Court to designate their Second Amended Complaint (Dkt. 616) to be the operative consolidated class action complaint and enter the protective order discussed herein.

---

[1] Plaintiffs in the *Ma Class Action* include: Kinnie Ma Individual Retirement Account (IRA), Dean Crooks, Corri Rene Eden, Jeffery S. Gramm IRA, Stacy Greasor IRA, Catherine Kominos, Karen Loch, Robert A. Stone Living Trust, Shirley Stone Living Trust, Victor Wade IRA and Kazue M. Bell (collectively, the "*Ma* Plaintiffs"). All docket references herein are to the *Ma* Docket unless otherwise indicated.

[2] Given the Court's decisions denying the motions to dismiss in *Ma* Class Action (Dkts. 810-828) and recent statements by *Barasch* counsel, as described herein, the *Ma* Plaintiffs withdraw their amended motion to consolidate and appoint interim lead counsel (Dkt. 528) ***only*** to the extent it sought consolidation with the *Barasch* Class Action.

[3] The plaintiffs in the *Barasch Class Action* include Millicent Barasch, through her sons as trustees of a Barasch Trust, and Loretta DeHay (the "*Barasch* Plaintiffs").

## II.    PRELIMINARY STATEMENT

This Court should not consolidate the *Ma* Class Action with the *Barasch* Class Action for numerous important reasons.

*First*, consolidation of the two actions would be highly prejudicial to the putative class represented in the *Ma* Class Action insofar as the *Ma* Plaintiffs assert claims against approximately 62 Broker Dealer Defendants ("Broker Defendants") while many of these same Broker Defendants are also the subject of arbitration claims that the *Barasch* Plaintiffs or their counsel are asserting on behalf of a relatively small group of GPB investors. The conduct of the *Barasch* Plaintiffs and their counsel to date precludes consolidation here. Counsel for the *Barasch* Plaintiffs are soliciting GPB investors who are putative class members in the *Ma* Class Action to pursue individual arbitrations against Broker Defendants, while also purporting to represent members of the class in the *Barasch* Class Action. Such actions are adverse to the interests of the class in the *Ma* Class Action and could be used by Defendants to oppose class certification.

*Second*, the *Ma* Plaintiffs have successfully pled claims against the Broker Defendants under the Texas Securities Act ("TSA") and under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), even though the *Barasch* Plaintiffs and the *Barasch* counsel (collectively, "*Barasch*") have publicly espoused legal positions contrary to the interests of these Class members on these claims.  In order to avoid substantial prejudice to the class from *Barasch's* assertion of these prejudicial positions, this Court should permit the *Ma* Plaintiffs to proceed with the Second Amended Complaint ("SAC") filed by them on or about November 9, 2020, without further delay, and stay the *Barasch* Class Action, permitting the Plaintiffs in the *Barasch* Class Action to pursue

individual litigation as against the Defendants—a course of action their counsel has repeatedly stated to this Court that they were prepared to undertake.[4]

*Third*, consolidation presents a monumental administrative conflict with respect to allowing *Barasch* access to discovery that would not otherwise be available to its clients in the arbitrations. Permitting access to this discovery in a consolidated action would be prejudicial to the Broker Defendants many of whom are defendants in arbitrations brought by the *Barasch* Plaintiffs or their counsel. Moreover, requiring the *Ma* Plaintiffs to make "non-broker" related discovery available to the *Barasch* Plaintiffs through consolidation of the actions would also present an insurmountable administrative burden upon the *Ma* Plaintiffs, who would need to determine—document by document—which discovery could be shared or not.

Thus, it makes the most sense to allow the cases to proceed separately, albeit with coordinated discovery. This relief both serves the interests of all Class Members in the *Ma* Class Action and the *Barasch* Plaintiffs and is entirely consistent with the positions taken and relief sought by *Barasch* in their papers filed in this Court (Dkt. 542), at the recent Court conference, and in subsequent correspondence with *Ma* counsel.[5]

---

[4] Should the Court believe that consolidation is still warranted, it should designate the *Ma* Class Action Complaint (Dkt. 616) as the operative complaint and issue a protective order protecting against the sharing of Broker Defendant discovery with *Barasch*.

[5] As shown herein, the *Barasch* Plaintiffs, through their counsel, specifically represented to this Court on several occasions that if the claims pled by the *Ma* Plaintiffs as against the Broker Defendants survived a Rule 12(b)(6) motion, then the *Ma* Class Action should proceed alone, unimpeded and unencumbered by the *Barasch* Class Action, with the *Barasch* Plaintiffs pursuing their individual claims against certain Defendants (in addition to arbitrations they had already filed against certain Broker Defendants). *See* Declaration of Richard Stone, filed herewith ("Stone Decl."), Ex. A (Dkt. 542) at 3, 6 n. 8, 10, 19. Consistently, at the Court conference on September 23, 2021, *Barasch* counsel stated that they were prepared to have their clients "exercise their right to not participate in the class action, and they will have their own case that will be at least parallel, although it can certainly be coordinated with the *Kinnie Ma* case." Stone Decl., Ex. B (9/23/2021 Court Tr.) at 18. *See also* Stone Decl., Ex. B at 19-20. And, in recent correspondence with *Barasch*
[Footnote continued on next page]

## III.    BACKGROUND

On October 25, 2019, Plaintiff Kinnie Ma filed a 96-page class action complaint (the "Initial *Ma* Complaint") in this Court against more than 90 Defendants, including over 70 Broker Defendants,[6] for claims that they violated, among other things, the TSA. The Initial *Ma* Complaint was original work product filed after extensive legal and factual investigation (including information provided by confidential witnesses), research, and analysis. No other party filed any claims under the TSA or asserted claims against entities unrelated to GPB prior to the Initial *Ma* Complaint.

### A.    The *Barasch* Class Action Complaint

Two weeks after the Initial *Ma* Complaint was filed, a copycat complaint was filed in this Court on November 6, 2019 by another alleged investor, Millicent R. Barasch (now deceased), in the *Barasch* Class Action. Ms. Barasch acknowledged that her action was "a related action" to the *Ma* Class Action. *See Barasch* Dkt. 1-1. Ms. Barasch's initial complaint as well as her first and second amended complaints included causes of actions that overlapped with those that had been asserted in the *Ma* Class Action. Barasch's complaints added a conspiracy claim and named several additional nominal Defendants, who are not named in the *Ma* Class Action.[7]

---

counsel regarding the consolidation issue, *Barasch* counsel said that they were prepared to pursue individual claims as against the Defendants named in the *Barasch* Class Action if they do not obtain a class counsel role, and that that they were "in good shape either way." Stone Decl., ¶ 4(f).

[6] The *Ma* Plaintiffs voluntarily dismissed without prejudice a number of Broker Defendants that were included in the initial complaint.

[7] In addition to omitting the 62 Broker Defendants named in the *Ma* Class Action, the *Barasch* Class Action does not assert claims against three of the Auditor Defendants (Margolin, CohnReznick and Withum) or the two Valuation Defendants (Deloitte and Morrison Brown) named in the *Ma* Class Action. For its part, the *Barasch* Action asserts claims against 11 individuals and four entities (Highline Management, CKGF Holdings LLC, Austin Lake Technologies, and McAnna LP) who are not named in the *Ma* Class Action. The vast majority of these defendants are affiliates or agents of entities the *Ma* Plaintiffs sued.

The complaints in the *Barasch* Class Action have not alleged any claims as against the more than 60 Broker Defendants against whom the *Ma* Plaintiffs asserted claims related to their distribution of illegally issued GPB securities, as well as their participation in the GPB Ponzi scheme. Nor has the *Barasch* Class Action asserted claims against three of the Auditor Defendants or the two Valuation Defendants named in the *Ma* Class Action. As the Court is aware, all of these claims, including those asserted against the Broker Defendants, have survived comprehensive motions pursuant to Rule 12(b)(6).

*Barasch* counsel has sought to prevent the assertion of claims against the Broker Defendants in the *Ma* Class Action by aggressively courting putative class members to commence arbitrations and by asserting specious legal arguments contending that claims the *Ma* Class Action was asserting against broker dealers on behalf of the putative class were faulty or baseless.[8] Such arguments against the *Ma* Class claims, which were then adopted by some defendants, were rejected by this Court. Nevertheless, *Barasch*'s attacks on *Ma* Class Action claims preclude consolidation of the *Barasch* Class Action with the *Ma* Class Action.

### B.    *Barasch* Counsel's Marketing Campaign

Because *Barasch* counsel sought, and is seeking, to pursue claims against brokers who distributed GPB securities exclusively through FINRA arbitrations, *Barasch* counsel has publicly announced in newspapers and press releases and through press conferences that it has commenced approximately 36 arbitrations against many of the Broker Defendants named in the *Ma* Class Action. *See* Stone Decl., ¶4(c) and Ex. C (June 30, 2020 press release) at 1. They have also acknowledged that they are *publicly recruiting* putative class members to commence such

---

[8] The *Barasch* Plaintiffs' efforts to undercut the *Ma* Class Action was a strategic decision designed to prevent the *Ma* Plaintiffs from pursuing the Broker Defendants through a common class action, so that arbitration would be putative class members' only route to proceed as against the brokers.

arbitrations, including telling them in a promotional internet audio solicitation that they "need to step forward now." Stone Decl., ¶ 4(d). *Barasch* counsel have also promoted publicly their intention to file additional arbitrations and have encouraged putative class members to file such arbitrations without publicly disclosing to them the existence or precise nature of the pending class action filed by the *Ma* Plaintiffs and the fact that *Ma* Class Action successfully pled claims against such Broker Defendants. In this regard, the *Barasch* counsel's public statements, which were not authorized by this Court, failed to provide complete and accurate information to putative class members.

In particular, on or about February 9, 2021, one of the *Barasch* counsel,[9] Peiffer Wolf Carr Kane & Conway ("Peiffer Wolf"), published a press release containing the following statement:

> "'Opening the Floodgates': Major Surge in Lawsuits Expected From Thousands of GPB Capital Victims in Class Action Litigation and FINRA Arbitration Cases to Recover Lost Investments."

Stone Decl., Ex. D, at 1. The press release went on to state that "*Peiffer Wolf is the leading U.S. law firm seeking justice for victims of GPB Capital.*" *Id.* at 1 (emphasis added). And, it immediately followed this assertion by adding that Peiffer Wolf "turned up the heat with a major update to their class action lawsuit and by reaching the nearly three-dozen mark in related FINRA arbitration cases seeking recovery for defrauded investors." *Id.* Peiffer Wolf closed its press release by stating that it forecast "an 'avalanche' of retiree arbitration cases in the unfolding scandal." *Id. See also* Stone Decl., Ex. C at 2. Nowhere in this press release, nor in any of the other publicly-available marketing materials published by Peiffer Wolf (again, not authorized by

---

[9] *Barasch* counsel, as used herein, includes three firms that have appeared as counsel in the *Barasch* Action: Peiffer Wolf; Meyer Wilson Co., LPA; and Stoll Stoll Berne Lokting & Shlachter P.C.

this Court) did Peiffer Wolf mention the existence, or nature, of the *Ma* Class Action in this Court or of any specific proceedings in this Court.

The *Barasch* counsel, through Peiffer Wolf, are in effect publicly soliciting and encouraging absent putative class members in the *Ma* Class Action to opt out from that class action to participate in arbitrations using only the *Barasch* counsel as their counsel. Again, none of this publicly-available marketing and solicitation for opt outs contains any disclosures with respect to the existence or nature of the *Ma* Class Action or mentions the relative benefits of proceeding by class action and/or arbitration.

One of the *Barasch* counsel has stated in this Court that "[his law firm] has not filed any arbitration claims", seeking to distance himself from *Barasch's* two track strategy of proceeding in court *and* FINRA arbitrations. Stone Decl., ¶ 4(b) and Ex. B (9/23/21 Tr.) at 31. This is a red herring. Each of the law firms that comprise the *Barasch* counsel has signed pleadings in this court representing the named *Barasch* Plaintiffs, both of whom are also arbitrating their claims against brokers. Moreover, in pleadings and submissions to this Court these law firms, including the specific law firms who are counsel of record in the *Barasch* Plaintiffs' arbitrations, are working collectively in the *Barasch* Class Action.

Thus, the *Barasch* Plaintiffs were represented by individual lawyers from each of the law firms comprising the *Barasch* counsel in various pleadings and at this Court's hearing on September 23, 2021. Stone Decl., Ex. B (9/23/21 Tr.) at 2. In addition, almost all of the correspondence between *Ma* counsel and the *Barasch* counsel have included each of such law firms. Stone Decl., ¶4(f). Clearly, all of the law firms in the *Barasch* counsel group are working on both the class actions and the arbitrations at issue whether it be directly or indirectly and are likely sharing fees with respect to both the *Barasch* Class Action and the arbitrations. Their

apparent contention that because one of such firms has not specifically "filed" any arbitrations it, therefore, is not part of the *Barasch* counsel group that is filing both arbitrations and the *Barasch* Class Action, is nonsense.

### C.   *Barasch* Engaged in Conduct Adverse to the Interests of the Class

In addition to attempts to reduce the class size of the *Ma* Class Action through arbitration marketing, *Barasch* has taken actions which directly harm putative members of the *Ma* Class Action. As previously demonstrated in the *Ma* Class Action's motions to consolidate (*see* Dkts. 50, 138, 528, and 540), the *Barasch* Plaintiffs and their counsel put forth baseless legal arguments (which were wholly rejected by this Court in its Rule 12(b)(6) decision) that the *Ma* Class Action had not adequately pled claims as against the 62 Broker Defendants under the TSA and TUFTA.[10] Indeed, in submissions to this Court *Barasch* characterized the *Ma* Plaintiffs' (successful) claims against the Broker Defendants as "unorthodox" and not "viable." *Barasch* Dkt. 11 at 2. In particular, *Barasch* Plaintiffs and their counsel contended that such claims should fail because there was no "privity relationship" between the purchasers of GPB Securities and each of the Broker Defendants. Dkt. 542 at 3, 8. This seriously misstated the operative law regarding the TSA. *Barasch* also attempted to undermine the *Ma* Plaintiffs' successfully-pled TUFTA claims against the Broker Defendants. Dkt. 542 at 8. In taking such positions, *Barasch* acted in a manner wholly adverse to the *Ma* Class Action (and thus to the putative *Ma* and *Barasch* classes) and seemingly in conflict with their fiduciary obligations to the putative class.

These *Barasch* arguments were mimicked by certain Defendants but rejected by this Court in its Rule 12(b)(6) orders. *Barasch*'s arguments can only be characterized as frivolous, given the

---

[10] The *Ma* Plaintiffs have asserted similar TUFTA claims against both the Broker Defendants, the Ascendant entities, Axiom, and the Fund Administrator, Phoenix American.

ample law supporting the *Ma* Plaintiffs' TSA claims and because the courts in the Fifth Circuit

Court have made clear that a TUFTA claim against participants in a Ponzi scheme is a viable and

powerful claim.[11]

## IV.   ARGUMENT AND AUTHORITY

### A.   The Class Actions Should Not Be Consolidated, the *Barasch Class Action* Should Be Stayed and the *Barasch* Plaintiffs Should Be Permitted to Pursue Their Individual Claims as They Represented to This Court They Would.

#### 1.   The Standard for Consolidation.

Fed. R. Civ. P. 42(a) provides that if actions "involve a common question of fact," a court

may "consolidate the actions" or "**issue any other orders to avoid any unnecessary costs or**

**delay**." (emphasis added).  The decision to consolidate "is entirely within the discretion of the

district court as it seeks to promote administration of justice." *Gentry v. Smith*, 487 F.2d 571, 581

(5th Cir. 1973).  Rule 42(a) "rests on principles of comity and sound judicial administration". *Cadle*

*Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999).

#### 2.   *Barasch*'s Prior Representations to the Court Preclude Consolidation

*Barasch* counsel have made clear through their statements in this Court and elsewhere that

consolidation is inappropriate.  Specifically, on or about July 27, 2020, *Barasch* counsel

represented to this Court in a brief that: "If this Court is inclined to consolidate these cases or

appoint [the *Ma*] movants as lead counsel, the *Barasch* plaintiffs will amend their complaint to

explicitly opt out of any class later certified in *Kinnie Ma* and to proceed as a group action with

---

[11] *See* Dkt. 813 (this Court's Order sustaining TUFTA claims) at 12-13 and cases cited therein. *Barasch* counsel's baseless public opposition to the TUFTA claims pled in the *Ma* Class Action was also designed to prevent the *Ma* Class Action from pursuing claims under TUFTA against Broker Defendants. As with its frivolous arguments concerning privity, the *Barasch* Plaintiffs incorrectly argued that the TUFTA claim as against the Broker Defendants, who received approximately $200 million in fraudulent conveyances, was baseless. They did so apparently for the sole purpose of being able to protect their franchise in bringing independent arbitrations outside of the *Ma* Class Action.

non-class claims only by the individual plaintiffs represented by *Barasch* counsel." Dkt. 542 at 6, n. 8. *Barasch* repeated these representations to the Court later in the same brief stating:

> In the near future, the Court will decide which theory of the case it accepts. At that juncture, consolidation and appointment of lead counsel will be ripe for decision. If the Court adopts the *Barasch* Plaintiffs' model, then this suit should proceed, with undersigned [*Barasch*] counsel representing the class. On the other hand, if the Court adopts the *Kinnie Ma* plaintiffs' model, then it follows that their suit should proceed as the lead case, with their counsel [the *Ma* counsel] representing the class. *Barasch* counsel can then assert non-class, opt-out claims as their clients see fit.

*Id.* at 10; *see also* Dkt. 542 at 19 ("The fundamental differences between this case and *Kinnie Ma* need to be resolved through the completion of the Rule 12(b)(6) briefing. If the *Kinnie Ma* approach of suing non-selling brokerage firms is ultimately accepted by the court, then *Kinnie Ma*'s chosen counsel can be appointed legal counsel. If the *Kinnie Ma* theory is rejected, then *Barasch*'s chosen counsel should represent the class.")

In addition, consistent with their prior pleadings *Barasch* counsel stated in correspondence to *Ma* counsel that if they did not receive class leadership role they were "in good shape" pursuing individuals claims solely for their clients. Stone Decl., ¶4(f).

*Barasch* counsel's recent comments at the September 23, 2021 court conference reaffirmed that they are prepared to have their clients "exercise their right to not participate in the class action, and they will have their own case that will be at least parallel, although it can certainly be coordinated with the *Kinnie Ma* case." Stone Decl., Ex. B (9/23/2021 Tr.) at 18. *Barasch* counsel also stated:

> Well, I think we could certainly have consolidation at least for purposes of discovery. If it plays out, Your Honor, that there is a class action and it's the *Kinnie Ma* case that is the lead case and then there's the *Barasch* case that is what I would call a mass action, there are going to be issues that are different between the two cases. For example, we don't -- we have asserted different claims in some respects than the *Kinnie Ma* plaintiffs. And there also would be a class certification process in the *Kinnie Ma* case that we wouldn't have in ours. So I'm not sure it would be a completely mutual consolidation, but we could at least for now consolidate for

discovery purposes and cross the bridges of those potentially unique issues as we go down.

Stone Decl., Ex. B (9/23/2021 Tr.) at 19-20.

*Ma* counsel has successfully pled claims under the TSA as against the more than 60 Broker Defendants and under TUFTA as against such Broker Defendants and the Fund Administrator. Given these facts, and *Barasch* counsel's prior representations to this Court that they would pursue individual litigation, *Barasch* counsel should be held to their representations.[12]

### 3.    Multiple Conflicts Preclude Consolidation

In addition to *Barasch* counsel's representations to this Court with respect to appropriateness of non-consolidation, there are three concrete reasons why consolidation would be inappropriate and prejudicial to the *Ma* putative class and to certain Defendants in this case. Courts have recognized that if consolidation presents conflicts which could impair the recovery by class members, or cause prejudice to the class members, then consolidation should not be mandated. *Krim v. pcOrder.com, Inc.,* No. A 00 CA 776 SS, A 00 CA 831 SS, A 01 CA 096 SS, 2001 WL 862628, at *3 (W.D. Tex. May 14, 2001) (J. Sparks) ("The Court should recognize that consolidation may not be proper when consolidation may be prejudicial to the rights of the parties involved."); *see also Fenner Invs., Ltd. v. 3Com Corp.,* No. 6:08-CV-61, 2008 WL 4876816, at *2

---

[12] When and if *Barasch* counsel files such individual actions in this Court, the *Ma* counsel will coordinate discovery to the extent possible.  Such coordination should obviously not occur with respect to any new plaintiffs' actions unless and until *Barasch* counsel files such actions. Moreover, any such coordination should preclude *Barasch* counsel from having access directly or indirectly to documentation and evidence obtained through discovery with respect to the Broker Defendants, as discussed herein.  In any event, many, if not most, of the individual actions which *Barasch* counsel may file, per its statements, will be in state court not here. This is so because the Class Action Fairness Act, 28 U.S.C. §1332(d), will not apply for numerous reasons including, without limitation, the requirements set out in 28 U.S.C. §§ 1332(d)(11)(B) and (d)(9).

(E.D. Tex. Nov. 12, 2008) ("consolidation is improper if it would prejudice the rights of the parties.").

Moreover, courts have consistently recognized that class counsel, even counsel to a putative class, are fiduciaries and must act with unwavering and complete loyalty to the class members they represent. *See Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 589 (W.D. Tex. 2002) ("the ''responsibility of class counsel to absent class members ... does not permit even the appearance of divided loyalties of counsel."); *Nat'l Air Traffic Controllers Ass'n. v. Dental Plans, Inc.*, No. Civ.A. 1:05-CV-882TW, 2006 WL 584760, at *4 (N.D. Ga. Mar. 10, 2006) (class counsel must avoid appearance of divided loyalties.); 1 McLaughlin on Class Actions: Law and Practices, 17th Edition, §4:39 (2020) ("Courts have consistently held that counsel cannot simultaneously represent the class and prosecute either individual or class claims against the same defendants in a different proceeding."). *See generally Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999) (conflicted class counsel cannot represent class); *In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D. 552, 557 (S.D. Ohio 2005) ("Counsel cannot represent different classes of plaintiffs with conflicting claims who are seeking recovery from a common pool of assets.").[13]

### a.    *Barasch's* Three Conflicts

Here, the proposed *Barasch* Class Action cannot be consolidated because the *Barasch* Plaintiffs and *Barasch* counsel have a series of conflicts with the *Ma* Class Action.

**i. Competing for the Same Limited Sources of Recovery.** *Barasch* Plaintiffs and counsel have a direct conflict with the *Ma* Class Action because both the *Ma* Class Action and the

---

[13] See *Ma* Plaintiffs' prior briefing on such conflicts (Dkt. 540 at 5 n.3) and cases cited therein: *Krim,* 210 F.R.D. at 590-91 (class counsel's conflict from representation in multiple cases rendered it inadequate); *Pan-American Tel. Co. v. Municipality of San Juan*, No. 09-1256 (ADC/BJM). 2011 WL 13234198 at *3-4 (D. P.R. Sept. 9, 2011) (finding counsel had conflict representing both class and individuals); *LeBeau v. U.S.*, 222 F.R.D. 613, 618 (D.S.D. 2004) (same).

arbitrations brought by *Barasch* counsel are seeking recovery from common defendants (the Broker Dealers) based upon the same course of conduct (the GPB Ponzi Scheme and the Offerings). Here, many of the Broker Defendants are thinly capitalized and may be unable to satisfy judgments for both the Class and the *Barasch* arbitration plaintiffs. Indeed, *Ma* counsel represent to this Court that they have had conversations with certain Broker Defendants who explained that they may not be able to satisfy judgments for both the class actions and arbitrations that have been commenced against them. Stone Decl., ¶5. This conflict is manifest and ripe.

Moreover, the *Barasch* arbitration plaintiffs have a timing advantage over the Class with regard to accessing such limited funds because the arbitrations do not involve extensive motion practice and are proceeding apace. Some have proceeded to settlement. Accordingly, the *Barasch* Plaintiffs and their counsel are acting in a fashion inconsistent with the interests of the *Ma* class members by taking advantage of the fact that they can proceed with their arbitrations in an expedited fashion and seek assets from a limited pool held by certain of the Broker Defendants.

Further, a conflict will arise at the time of settlement as recoveries from arbitrations must be factored into and reduce the potential class recovery for such arbitration participant. Typically, this reduction is a dollar-for-dollar reduction from the Class recovery. Here, however, *Barasch* counsel will be obligated to argue, on behalf of their clients, for a smaller reduction or no reduction at all. *Barasch* counsel cannot advocate for both the class interest in a full reduction and their personal clients' interest in no reduction. This is an irremediable conflict.

**ii. *Barasch*'s Enunciated Legal Positions are Adverse to the *Ma* Class.** *Barasch* counsel and the *Barasch* Plaintiffs have a manifest conflict with the interests of the putative *Ma* class members, because they have taken legal positions in pleadings filed in this Court which are inconsistent with the interests of the *Ma* class. Specifically, *Barasch* argued that in effect the Court

should dismiss the *Ma* Plaintiffs' claims as against the Broker Defendants under the TSA because of a purported lack of privity.  Similarly, they argued that the *Ma* Plaintiffs' TUFTA claims (which were asserted against the Broker Defendants and other defendants and are easily proved in the Ponzi scheme context)[14] were meritless. Both arguments were baseless and rejected by this Court. Nevertheless, consolidating the *Barasch* Class Action with the *Ma* Class Action will saddle the *Ma* Class Action with these inaccurate arguments in litigation on a going forward basis.[15]  The *Ma* Plaintiffs should not be required to continue to rebut or address these arguments as the case proceeds through summary judgment.  *Barasch*'s maintenance of this position is directly contrary to the interests of the putative class members in the *Ma* Class Action, is contrary to their fiduciary duty and makes consolidation prejudicial and inappropriate.

**iii. Consolidation with *Barasch* Presents Insurmountable Discovery Obstacles.**

*Barasch*'s strategy of pursuing individual arbitrations and soliciting *Ma* class members to do the same against Broker Defendants, while also purporting to be class counsel in the *Barasch* Class Action, presents a monumental administrative conflict with respect to discovery and is prejudicial to both the *Ma* Class Action and to the Broker Defendants.[16]

---

[14] *See Rotstain v. Trustmark Nat'l Bank,* No. 3:09-CV-2384-N-BQ, 2020 WL 1513516 at *2 (N.D. Tex. Mar. 30, 2020). *See also* Dkt. 813 (this Court's Order on motion to dismiss) at 12-13.

[15] Accordingly, in no event can the *Barasch* Plaintiffs or the *Barasch* Counsel have any role in a consolidated action which asserts TSA or TUFTA against Broker Defendants or the Fund Administrator, because *Barasch* opposed the legitimacy of these claims. *See Keim v. ADF MidAtlantic, LLC,* 328 F.R.D. 668 n. 13 (S.D. Fla. 2018) (lead plaintiff and counsel must act solely in the interest of absent class members even when this conflicts with the class representative's position); *Pigford v. Veneman*, 355 F. Supp. 2d 148, 168 (D.D.C. 2005) (class counsel must protect the class as a whole).

[16] *Ma* class counsel have spoken to several of the Broker Defendants.  Each of them has maintained that it believes it would be unfairly prejudiced by consolidation for the reasons outlined in this point. Stone Decl., ¶5. On information and belief, several of such Defendants will be submitting briefing with respect to this issue.

It is beyond dispute that FINRA arbitrations permit only very limited discovery. *See Speetjens v. Larson*, 401 F. Supp. 2d 600, 608 (S.D. Miss. 2005) ("Defendant's contention that arbitration is unconscionable because of limited discovery is likewise without merit. ʹLimited discovery rights are the hallmark of arbitration.... Discovery is not a right in arbitration as it is in judicial proceedings.ʹ"); *Stevenson v. Goomar*, 148 A.D.2d 217, 225, 544 N.Y.S.2d 690 (N.Y. App. Div. 1989) ("[A]ll but one of the cited procedural differences between administrative and judicial proceedings (*i.e.*, absence of a jury, limited discovery and scope of appellate review) clearly existed in the entire line of cases where preclusive effect had been given to a prior administrative determination in a subsequent action at law."); *Mezzalingua v. Deutsche Bank AG*, 2006 N.Y. Slip Op. 30810, at *15 (N.Y. Sup. Ct. 2006) ("that the NASD rules may provide for more limited discovery does not make the arbitration provision unconscionable."), citing *Stewart v Paul, Hastings, Janofsky & Walker, LLP*, 201 F. Supp. 2d 291, 292 (S.D.N.Y. 2002) ("[t]he suggestion that an arbitration clause is unconscionable because discovery either is unavailable or more limited in arbitration than in litigation is preposterous.").

Here, however, if the cases are consolidated, *Barasch* will have access to all of the discovery undertaken in connection with the class action as against Broker Defendants and as against other parties who have information concerning the role and due diligence efforts of the Broker Defendants. This is prejudicial to the Broker Defendants and to the *Ma* Plaintiffs. Stated differently, *Barasch* can use consolidation as a basis to obtain comprehensive discovery undertaken by the *Ma* Plaintiffs for use in connection with their arbitrations, where such discovery is prohibited. It would be an extremely difficult, if not impossible, burden on the *Ma* Plaintiffs and their counsel to create a system whereby the *Barasch* did not have access to documents which would not otherwise be available through the limited discovery under FINRA rules. Conceivably,

any document obtained might bear upon the liability of Broker Defendants in such arbitrations. Permitting *Barasch* to have access to these documents would be prejudicial to the Broker Defendants and the class and evade FINRA rules. Preventing such access would unfairly burden the *Ma* Plaintiffs and their counsel.

Moreover, through such discovery, *Barasch* could gain access to the names, addresses, and other identifying information of all putative *Ma* class members. Given the public statements they have made and the public solicitations they have engaged in, *Barasch* could use such information to get potential *Ma* class members to opt out of the consolidated class action and pursue arbitrations against the Broker Defendants. This will have a materially negative effect upon the scope and likelihood of recovery of the Class and is inconsistent with the Class's interests.

Stated simply, consolidation manifests the conflict with the *Barasch*'s two-tier strategy. It would enable *Barasch* to access discovery which they should not be able to access in connection with their arbitrations and would enable them to destroy in whole or in part the class action remedy by opting additional investors out of the class to pursue individual arbitrations.[17]

### 4. Staying the *Barasch* Action From Proceeding as a Class Action is Appropriate.

A stay of the *Barasch* Class Action that would allow the *Barasch* Plaintiffs and other clients of *Barasch* counsel to pursue individual actions (precisely what *Barasch* counsel said they were prepared to undertake) is consistent with the proper exercise of this Court's discretion. *Clinton v. Jones*, 520 U.S. 681, 683 (1997) (a court "has broad discretion to stay proceedings as an incident to its power to control its own docket."); *Liu v. Aventis Pasteur, Inc.*, 219 F. Supp. 2d 762, 768

---

[17] A plaintiff who has "ulterior motives" unrelated to pursuing class claims is an inadequate class representative. *Martinez v. Barasch,* No. 01 Civ. 2289 (MBM), 2004 WL 1367445, at *7 (S.D.N.Y. June 16, 2004).

(W.D. Tex. 2002) (the court has discretion to stay proceedings), ("Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication.")).

Here, such a stay is appropriate for the reasons outlined herein.  *Barasch* counsel has represented that their clients are prepared to pursue their individual claims in lieu of a class action in the event the Broker Defendants' claims and TUFTA claims survived dismissal, which they have. Their request can be honored by this Court without prejudice to the *Ma* Class Action or to the *Barasch* Plaintiffs. Moreover, a stay is consistent with the general accepted "first to file rule" (*i.e.*, that a court should stay a later filed duplicative class action (the *Barasch* claim) in favor of the first filed action (*Ma*) to avoid duplicative litigation. *See Needbasedapps, LLC v. Robbins*, 926 F. Supp. 2d 919, 931-32 (W.D. Tex. 2013); *Wolf Designs, Inc. v. Donald McEvoy Ltd., Inc.*, 341 F. Supp. 2d 639, 642 (N.D. Tex. 2004) ("The Fifth Circuit has specifically recognized that district courts have inherent power to stay or dismiss an action where the issues presented can be resolved in an earlier filed action pending in another federal district court.") (citing *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-31 (5th Cir. 1985) (same); see also *Sutter Corp. v. P&P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997) ("first to file rule" determines which court may issue stay).

## V.    CONCLUSION

For the above stated reasons, the Court should (1) decline to consolidate the *Ma* and *Barasch* Class Actions, (2) stay the *Barasch* Class Action as a putative class action but allow the *Barasch* Plaintiffs to pursue their individual claims, and (3) order coordination of pretrial discovery among the actions filed in this Court with protections that ensure that discovery respecting the Broker Defendants produced in the *Ma* Class Action not be produced to the *Barasch* Plaintiffs or the *Barasch* counsel. In the alternative, should the Court deem consolidation to be the

most appropriate course of action, the *Ma* Plaintiffs ask the Court to designate the *Ma* Plaintiffs'

Second Amended Complaint (Dkt. 616) to be the operative consolidated class action complaint

and enter the protective order discussed herein.

Dated:  October 14, 2021          Respectfully submitted,

**EDMUNDSON SHELTON WEISS PLLC**

By: */s/ Jesse Z. Weiss*
Ryan Shelton
SBN: 24037484
ryan@eswpllc.com
Jesse Z. Weiss
SBN: 24013728
jesse@eswpllc.com
317 Grace Ln, Ste 210
Austin, TX 78746
Telephone: (512) 596-3058
Facsimile: (512) 532-6637

***Liaison Counsel for Ma Plaintiffs***

**KAPLAN FOX & KILSHEIMER LLP**
Peter S. Linden, Esq.
850 Third Avenue
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

**BLACKNER STONE & ASSOCIATES, P.A.**
Richard L. Stone (admitted *pro hac vice*)
609 South Beach Road
Jupiter, Florida 33469
Telephone: (561) 358-4800
Email: rstoneesq@rstoneesq.com

***Counsel for Ma Plaintiffs***

**CERTIFICATE OF SERVICE**

I do hereby certify that a true and correct copy of the above and foregoing instrument and the Declaration of Richard L. Stone with exhibits attached hereto have been served on all counsel of record via the CM/ECF system this 14th day of October, 2021.

*/s/ Jesse Z. Weiss*
Jesse Z. Weiss